IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ROBERT L. FINDLEY,             *

    Plaintiff,              *

    v.                      *    CIVIL NO.: WDQ-14-3658

USDA, RURAL HOUSING SERVICE    *
ADMINISTRATOR,

    Defendant.              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Robert L. Findley, *pro se*, petitioned for judicial review of an administrative decision by the United States Department of Agriculture's ("USDA") Rural Housing Service Administrator. Pending is USDA's motion to dismiss under the Administrative Procedures Act ("APA").[1]  For the following reasons, the motion will be granted.

I.   Background[2]

On July 2, 1984, Findley, on behalf of Hurlock Village Associates L.P. ("Hurlock"),[3] executed a loan agreement under

---

[1] 5 U.S.C. § 701, *et seq.*

[2] The facts are taken from the administrative record. Judicial review under the APA "is limited to the administrative record before the agency when it makes its decision." *Trinity Am. Corp. v. U.S. Envtl. Prot. Agency*, 150 F.3d 389, 401 n. 4 (4th Cir. 1998).

[3] Findley is the managing general partner of Hurlock.

Section 515, Title V of the Housing Act of 1949[4] with the Rural Housing Service ("RHS")[5] arm of the USDA. Administrative Record (hereinafter "Admin. Rec.") at 454.[6] The purpose of the loan was for Findley to construct low and moderate income housing. *Id.* On August 7, 1986, Hurlock executed and delivered to the USDA a 50-year promissory note for $708,000.00. *Id.* at 458. Hurlock also executed a mortgage and security agreement in favor of the USDA. *Id.* at 464, 480. Further, under an interest credit agreement, the USDA agreed to subsidize the interest due on the promissory note for the life of the loan. *Id.* at 452.

Hurlock used the funds from the USDA to construct the Hurlock Village Apartments ("Hurlock Village"). Hurlock's monthly payments under the agreement were $1,510.97. Admin. Rec. at 452. Between 1986 and 2008, monthly payments of the loan were made without incident.

---

[4] 42 U.S.C.A. § 1485

[5] "RHS's multi-family housing ("MFH") direct loan and grant programs serve eligible very-low, low, and moderate income households. The MFH programs provide funding for economically designed and constructed rural rental, cooperative, and farm labor housing and related facilities operated and managed in an affordable, decent, safe, and sanitary manner. These programs are authorized by Title V of the Housing Act of 1949." ECF No. 14-1 at 2 n.2.; *see also* 7 C.F.R. § 3560.1.

[6] The USDA sent the administrative record to the court on April 14, 2015 because it was too voluminous for filing on the electronic docket. *See* ECF No. 10.

On May 11, 2009, Hurlock informed the USDA that it was not going to make its monthly payment. Admin. Rec. at 57-58. On July 17, 2009, Hurlock sent a letter to the USDA, requesting loan restructuring. *Id.* at 546. On September 17, 2009, USDA advised Hurlock of its options: transfer ownership of the property, obtain tax credits, or apply for USDA's Multi-Family Housing Preservation and Revitalization Demonstration Program. *Id.* at 233-34. Over the course of 2009 and 2010, Hurlock and the USDA tried to find a solution to Hurlock's financial difficulties. *Id.* at 550, 558.

On April 27, 2010, the USDA paid $10,062.37 in state taxes and $8,072.37 in local taxes for Hurlock. Admin. Rec. at 424-41. On April 13, 2011, the USDA paid another $18,000 in state and local taxes for Hurlock. *Id.* at 406-23. On April 3, 2012, the USDA again paid Hurlock's taxes in the amount of $15,231.17. *Id.* at 400-05.

In 2011, Hurlock Village underwent a self-evaluation and needs assessment. Admin. Rec. at 661-82. The assessment concluded that Hurlock Village lacked a number of accommodations required by the Americans with Disabilities Act and the Fair Housing Amendments Act. *Id.* at 661-82. The USDA issued Hurlock Village a Self-Evaluation and Transition Plan. *Id.*

On October 24, 2011, the USDA sent Hurlock a Routine Notice of Servicing Results/Concerns. Admin. Rec. at 396. The notice informed Hurlock that the USDA was concerned about Hurlock's delinquency on the loan, unpaid real estate taxes, and high vacancy rate[7] at the apartment complex. *Id.* at 396. On November 14, 2011, Hurlock sent the USDA a letter in which it conceded that it was delinquent in its payments and had failed to pay its taxes. *Id.* at 384-85. Hurlock requested deferral of its loan payments, and that all real estate taxes paid by USDA be added onto the end loan balance. *Id.*

On December 19, 2011, the USDA again informed Hurlock that it was concerned about the delinquent loan payments, the unpaid taxes, and the vacancy rate. Admin. Rec. at 381-82. Further, the USDA explained to Hurlock that the requested loan restructuring was not viable. *Id.* On January 23, 2012, the USDA sent Hurlock a Notification of Intent to Pursue More Forceful Servicing Actions. *Id.* at 379. The notice informed Hurlock and Findley that if corrective actions were not taken, the USDA would accelerate the loan. *Id.*

---

[7] Under USDA's multi-family housing projects, 5% vacancy was considered an "acceptable" rate. *See* Admin. Rec. at 57. Hurlock's vacancy rate ranged from 7.54% to 23.77% between 2008 and 2012. *See id.* at 57, 360-62.

4

On August 10, 2012, the USDA accelerated the loan based on Hurlock's default in payments and failure to pursue corrective action. Admin. Rec. at 291, 489. At the time of the notice, Hurlock's delinquent payments totaled more than $61,000, and the USDA had paid more than $50,000 in taxes for Hurlock. Id. at 29, 291-82, 570. Further, Hurlock's vacancy rate continued to exceed the acceptable USDA rate, and Hurlock Village had not complied with the 2011 Self-Evaluation and Transition Plan. Id. at 291-92.

Hurlock requested an informal meeting to address the acceleration of the loan. Admin. Rec. at 311. The meeting was held on September 5, 2012. Id. at 284. On September 11, 2012, the USDA informed Hurlock that it would continue with the acceleration of the loan. Id. at 284. Hurlock appealed the USDA's determination to the USDA's National Appeals Division ("NAD"). Id. at 13.

On October 4, 2012, the NAD Hearing Officer held a telephone conference and found that the "core issues on appeal" were: (1) whether Hurlock received proper servicing prior to acceleration; (2) whether Hurlock was more than 30 days past due at the time of acceleration; (3) whether Hurlock maintained vacancy levels as required by the USDA; and (4) whether Hurlock was in compliance with its Self-Evaluation and Transition Plan. Admin. Rec. at 46; see also ECF No. 14-3 (conference transcript) at 14.

On October 23, 2012, the NAD Hearing Officer held a hearing to address the merits of the appeal. *Id.* at 56. During the hearing, Hurlock and the USDA agreed that the core issues to be addressed were accurately summarized by the NAD Hearing Officer during the telephone conference. ECF No. 14-4 at 7-8.

On December 13, 2013, the NAD Hearing Officer concluded that the USDA did not erroneously accelerate the loan. Admin. Rec. at 56. The NAD Hearing Officer found that Hurlock was in monetary and non-monetary default under the terms of the loan, and that the USDA had properly serviced the loan. *Id.* at 59-61. The Hearing Officer did conclude, however, that Hurlock Village had adequately complied with the 2011 Self-Evaluation and Transition Plan. *Id.*

On October 1, 2014, Findley, on behalf of Hurlock, requested a review of the decision by the NAD Director. Admin. Rec. at 74. On November 12, 2014, the NAD Assistant Director found Hurlock's request untimely. Id. at 72. Hurlock was informed that the NAD Hearing Officer's decision would remain the final administrative decision. Id.

On November 21, 2014, Findley sued the USDA for failing to properly service the loan, providing various arguments from breach of contract to fraud for why the USDA was required to "fully fund" the housing project. See ECF No. 1

at 3.[8]  On December 10, 2014, Findley filed an amended complaint advancing similar arguments.  ECF No. 3.  On May 14, 2015, the USDA moved to dismiss under the APA.[9]  ECF No. 14.  On May 29, 2015, Findley opposed the motion.  ECF No. 16.  On June 15, 2015, the USDA replied.  ECF No. 17.

II. Analysis

   A. The USDA's Determination Under the APA

   "Under the Administrative Procedure Act ("APA"), [a] federal court[] can overturn an administrative agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,' or 'unsupported by substantial evidence.'"  *Knox v. U.S. Dep't of Labor*, 434 F.3d 721, 723-24 (4th Cir. 2006) (quoting 5 U.S.C § 706(2)(A),(E)).  "Substantial evidence is evidence that a reasonable person would accept as adequate to support a finding."  *Mackenzie Med. Supply v. Leavitt,* 419 F.Supp.2d 766, 773 (D. Md. 2006).

   This review is "necessarily a limited one" and should "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [the Court's] judgment for that of

---

[8] Although Findley advances several legal theories, he asserts that the Court's jurisdiction is under 7 C.F.R. § 11.13, which merely applies the APA to the USDA.  *See* ECF No. 1 at 2.

[9] The USDA asserts that the APA is controlling, but to the extent that the Court considers Findley's other theories, the USDA also captioned their motion as a motion to dismiss for lack of jurisdiction, motion for summary judgment, and motion to dismiss for failure to state a claim.  ECF No. 14.

the [agency]." *Almy v. Sebelius*, 679 F. 3d 297, 302 (4th Cir. 2012) (quoting *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996)).[10] It is the plaintiff's burden to establish that the agency action was arbitrary and capricious, and review "is generally confined to the administrative record." *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335-36 (4th Cir. 1995); see also *Johnson v. Spellings*, No. PJM 07-671, 2008 WL 8183822, at *4 (D. Md. July 11, 2008).

Here, Findley has not carried his burden to establish that the USDA's decision was arbitrary and capricious. In his opposition, Findley largely ignores the administrative record and, instead, advances numerous legal theories previously rejected by the NAD Hearing Officer for why the USDA was required to fully fund Hurlock's venture *in spite of* Hurlock's default. See ECF No. 16 at 2-4.

Although Findley failed to adequately address the administrative record, the Court reviewed the record on its own accord. The USDA provided promissory notes, payment histories, and voluminous exhibits supporting its findings. See ECF No.

---

[10] See also *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) ("A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.") (internal quotation omitted).

10. There is simply no evidence supporting the conclusion that the USDA's findings of monetary and non-monetary default were arbitrary and capricious or violated the law. *See Johnson*, 2008 WL 8183822, at *4. Further, Findley does not dispute that the loan was in default. He simply argues that the USDA was required to provide full financial assistance regardless of default. *See, e.g.*, ECF No. 1 at 3-4.

Moreover, the NAD Hearing Officer specifically addressed whether the USDA properly serviced the loan, including whether the USDA was required to restructure the loan, if the USDA had prevented Hurlock from raising its rent, and whether the USDA was required to provide rental assistance. Despite Findley's continued assertions that the USDA was required to provide loan restructuring even if Hurlock was ineligible, the USDA's Handbook and agency regulation establish that the USDA may consider, but is not required to provide loan restructuring. *See* Admin. Rec. at 60 (NAD findings discussing handbook); 7 C.F.R. § 3560.455. Further, Findley has failed to show that Hurlock could meet the terms for restructuring, such as transferring ownership--a recommendation which Hurlock received from the USDA but chose not to pursue. *See* ECF No. 14-5 (USDA Handbook, Chapter 11.4); Admin. Rec. at 233-34.

The administrative record and agency regulations also support the Hearing Officer's determinations that the USDA acted within the scope of regulations in rejecting Hurlock's increased rent, and that the USDA was not required to provide rental assistance under the servicing agreements.  *See, e.g.* ECF No. 14-6 (Handbook Ch. 8); 7 C.F.R. § 3560.251 *et seq.* Accordingly, Findley has failed to carry his burden under the APA.

B. Findley's New Legal Theories

In his amended complaint, Findley advances several new theories for the USDA's allegedly improper servicing which were not addressed in the agency proceedings.  For example, Findley asserts that there were "cardinal changes" made by Congress that affected Hurlock's loan adversely, Hurlock and the USDA were part of a joint venture partnership and the USDA was required by contract to fully finance the housing project, and the USDA was negligent in its servicing of the loan.  *See* ECF No. 3.

"Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Sims v. Apfel,* 530 U.S. 103, 114 (2000)(Breyer, J., dissenting).[11]  Similar to the rule that appellate courts will

---

[11] *See also Woodford v. Ngo,* 548 U.S. 81 (2006); *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36-37 (1952)

not consider arguments not raised before a trial court, courts have determined that under NAD's procedures, a district court should not review arguments that were not raised before the NAD.[12]  See *Mahon*, 485 F.3d at 1253; *Ballanger v. Johanns*, 495 F. 3d 866, 869-871 (8th Cir. 2007); *Care Net Pregnancy Ctr. of Windham Cnty. v. USDA*, 896 F. Supp. 2d 98, 109-14 (D.D.C. 2012). Accordingly, Findley's new legal arguments are not properly before this Court because he failed to present them to the NAD.

Even if the Court did not impose the exhaustion requirement, Findley's new arguments are without merit.  For example, Findley's "joint venture" and contract arguments are premised on an inapplicable statute.  Findley asserts that the loan documents establish a contract under the Contracts Dispute

---

("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts . . . [C]ourts should not topple over administrative decisions unless the administrative body not only has erred *but has erred against objection made at the time appropriate under its practice.*" (emphasis added)); *Unemployment Compensation Comm'n of Ala. v. Aragon,* 329 U.S. 143, 155 (1946).

[12] The Supreme Court in *Sims v. Apfel,* 530 U.S. 103 (2000) held that a district court cannot categorically require issue exhaustion under the APA.  However, the Court recognized that issue exhaustion may be appropriate under the statutes and regulations governing an agency. *Id.* at 108.  In the cases cited, the Eighth and Eleventh Circuits and the United States District Court for the District of Columbia applied the Court's reasoning in *Sims* to the USDA and the NAD's procedures.  These courts concluded that issue exhaustion should be required.

11

Act ("CDA").[13]  See ECF No. 3 at 6-10.  Findley also continually refers to the USDA as a "contractor."  Id. at 16.  A quick review of the loan documents in the administrative record shows them to be normal loan documents.  There is no evidence that the USDA breached a duty in these contracts, that the USDA was a "contractor," or that the documents establish a procurement contract as defined by the CDA.[14]  Even if the CDA were controlling, the Court would not have jurisdiction to address Findley's argument because the United States Court of Federal Claims has exclusive jurisdiction over such disputes.  See 41 U.S.C. § 609(a)(1).[15]

III. Conclusion

Because the USDA's actions were not arbitrary and capricious, the USDA's motion to dismiss under the APA will be granted.

_____        _____
1/12/16                                William D. Quarles, Jr.
Date                                   United States District Judge

---

[13] 41 U.S.C. § 609.

[14] See 31 U.S.C. § 6303(1) (A procurement contract exists when "the principal purpose of the instrument is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government.").

[15] To provide another example, as to Findley's negligence claim, he has failed to allege the elements of a negligence suit and has failed to comply with the notice and exhaustion requirements of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.